**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANN MORTON YOUNG HABLISTON, *et al.*, Plaintiffs, | ) | |
| v. | ) | Civil Action No. 15-2225 (ABJ) |
| FINRA REGULATION, INC., Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiffs Anna Morton Young Habliston and Seymour R. Young, Jr. are involved in an arbitration against Wells Fargo Advisors, LLC concerning their deceased parents' brokerage accounts. Apparently, they are extremely dissatisfied with how it is going so far, and they have brought this action against defendant FINRA Regulation, Inc. ("FINRA Regulation").[1] Substitute Am. Compl. [Dkt. # 10] ("Compl.").

1 Plaintiffs originally brought this lawsuit on December 21, 2015 against FINRA Dispute Resolution, Inc., Compl. [Dkt. # 1], but they filed an amended complaint on May 25, 2016 against FINRA Regulation, Inc. Am. Compl. [Dkt. # 8]. Plaintiffs then filed a substitute amended complaint on June 6, 2016. Substitute Am. Compl. [Dkt. # 10].

Plaintiffs allege that FINRA Regulation has failed to provide a fair arbitration forum because the arbitrators are biased, and their procedural rulings to date have been unfair;[2] that FINRA Regulation has failed to carry out its regulatory duties properly;[3] and that the binding arbitration provisions contained in the brokerage contracts are void or unenforceable.[4] Plaintiffs also seek damages under 42 U.S.C. § 1983, Compl. ¶ 109, and they ask the Court to appoint new arbitrators to hear the pending arbitration. *Id.* ¶ 111.

On July 29, 2016, defendant moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7), and 12(h)(3) on multiple grounds. It argues that plaintiffs' claims are not ripe for review since the arbitration is ongoing; defendant is immune from suit under the doctrines of arbitral and regulatory immunity; plaintiffs have failed to name indispensable parties; defendant is not a state actor for purposes of section 1983; the Securities and

---

2 *See, e.g.*, Compl. ¶¶ 48, 54, 70–71, 74 (alleging FINRA violated its own rules in conducting discovery and postponing hearings); *id.* ¶¶ 11–12, 49, 71, 73–74 (alleging FINRA arbitrators are industry-biased and have disqualifying relationships); *id.* ¶¶ 9, 44, 46–47, 108 (alleging FINRA acted with known conflicts of interest); *id.* ¶¶ 5(B), 11(K) (alleging FINRA has no meaningful method of oversight, because arbitrations are held in private and have inadequate appeal mechanisms); *id.* ¶¶ 5, 11–12, 44, 46, 83, 86, 100 (alleging the arbitration is not an impartial hearing before unbiased arbitrators); *id.* ¶¶ 11–12, 33, 47, 77, 98, 114 (alleging plaintiffs' discovery requests were unfairly denied or rejected); *id.* ¶¶ 12, 70, 85, 103, 114 (alleging plaintiffs were unfairly denied postponement of a hearing date for extraordinary circumstances); *id.* ¶ 86 (alleging replacement arbitrators will be biased).

3 *See, e.g.*, Compl. ¶ 9 (alleging failure to enter an enforcement action against Wells Fargo for violations of FINRA rules); *id.* ¶¶ 5(A), 11(A), 17 (alleging FINRA and FINRA Regulation allowed voting FINRA members to remain licensed with inadequate supervisory procedures); *id.* ¶ 93 (alleging violations of federal and state securities laws, as well as FINRA Rules); *id.* ¶ 114 (alleging FINRA concealed criminal misconduct and deceptive sales practices by Wells Fargo).

4 *See, e.g.*, Compl. ¶¶ 11, 95, 97–98 (alleging the provisions should be declared void against plaintiffs because defendant violated plaintiffs' constitutional rights); ¶ 89 (alleging they should be void or vacated because "they were obtained against the [p]laintiffs' will"); ¶ 105 (asking the Court "to declare FINRA pre dispute binding arbitration provisions . . . void or not enforceable" because FINRA Regulation "materially breached FINRA Arbitration Rules").

Exchange Act does not create a private right of action for alleged violations of rules enacted under the Act; and plaintiffs' request that the Court appoint new arbitrators is moot because replacement arbitrators have already been appointed. Mot. to Dismiss the Compl. [Dkt. # 16] ("Def.'s Mot.") at 1; Mem. of Law in Supp. of Def.'s Mot. [Dkt. # 17] ("Def.'s Mem.") at 1–2.

Plaintiffs failed to oppose many of these arguments, so the motion has been largely conceded. With respect to the open issues, the Court concludes that plaintiffs' claims are not ripe for review, and that defendant is entitled to arbitral immunity. Therefore, the motion to dismiss will be granted.

## BACKGROUND

Plaintiffs' parents, who are now deceased, maintained investment accounts with Wachovia Securities, Inc., now Wells Fargo Advisors, LLC ("Wells Fargo"), and they were the unfortunate victims of criminal misconduct. Compl. ¶¶ 1, 18. A Wells Fargo broker, Christopher Cunningham, was convicted of taking over $1 million from plaintiffs' parents and other customers. *Id.* ¶ 2. Thereafter, plaintiffs, acting in their parents' stead, brought suit against Wells Fargo and Fulcrum Services, Inc. ("Fulcrum"), alleging that they knowingly and recklessly allowed the theft to occur, leading to a loss of over $3 million. *Id.* ¶ 1.

Under the terms of the account agreements with Wells Fargo and Fulcrum, plaintiffs were required to submit their claims to a binding arbitration proceeding administered by the Financial Industry Regulatory Authority, Inc. ("FINRA"). *See* Compl. ¶ 4. FINRA is a private, not-for-profit Delaware corporation, *id.* ¶ 14, and according to defendant, is a self-regulatory organization ("SRO")[5] registered with the Securities and Exchange Commission ("SEC") as a national

5 A self-regulatory organization is defined as "any national securities exchange, registered securities association, or registered clearing agency." 15 U.S.C. § 78c(a)(26).

securities association.[6] Def.'s Mem. at 3. Its wholly owned subsidiary, FINRA Regulation, operates a dispute resolution forum that administers FINRA arbitrations.[7] Compl. ¶ 14. According to defendant, FINRA Regulation's Office of Dispute Resolution appoints arbitrators, maintains the arbitration files, processes pleadings and motions, drafts orders with arbitrator direction, and transmits documents between the parties. Def.'s Mem. at 4.

Plaintiffs' forty-four page substituted amended complaint is hardly a "short and plain" statement of the claims, Fed. R. Civ. P. 8(a), but it boils down to four counts. *See* Compl. In Count I, plaintiffs allege that the contractual "FINRA pre-dispute binding arbitration provisions should be vacated or declared void" because they violate plaintiffs' constitutional rights. *Id.* ¶¶ 89, 95, 97–98. In Count II, they allege that the arbitration provisions should be declared void because FINRA Regulation has materially breached FINRA arbitration rules. *Id.* ¶ 105. In Count III, plaintiffs bring a claim for damages under 42 U.S.C. §§ 1983 and 1988, alleging that FINRA Regulation acted "under color of law" to deny plaintiffs their constitutional rights under the due process and equal protection clauses. *Id.* ¶ 107. Specifically, plaintiffs claim that FINRA Regulation "knowingly violated its duty to act objectively and impartially" and acted with the

---

6 FINRA is a registered national securities association pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ("Exchange Act"). Def.'s Mem. at 3.

7 The SEC authorized FINRA to include pre-dispute binding arbitration provisions in their customer account agreements. Order Granting Accelerated Approval Regarding Rule Governing Predispute Arbitration Agreements with Customers, 69 Fed. Reg. 70293 (Dec. 3, 2004). Additionally, the SEC authorized FINRA to delegate its administration of arbitrations to FINRA Regulation, and FINRA has done so. *See* Order Approving Proposed Rule Change to Merge FINRA Dispute Resolution, Inc. into and with FINRA Regulation, Inc., 80 Fed. Reg. 79632 (Dec. 22, 2015); *see also* FINRA, Rule 0170, Delegation, Authority and Access (2015) http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=545. However, FINRA maintains ultimate responsibility for the work of FINRA Regulation. *See* FINRA, FINRA's Plan of Allocation and Delegation of Functions by FINRA to FINRA Regulation, Inc. (2015), *http://finra.complinet.com/en/display/display_viewall.html?rbid=2403&element_id=4594&record_id=16680&filtered_tag=*.

"intent to prejudice" plaintiffs by influencing "the objectivity and impartiality" of FINRA Regulation's arbitrators. *Id.* ¶ 108. Finally, in Count IV, plaintiffs request that the Court appoint replacement arbitrators under 9 U.S.C. § 5 because they "will be imminently and irreparably harmed" if the Court does not intervene to prevent FINRA Regulation "from violating its arbitrator selection rules." *Id.* ¶¶ 111–12.

On September 12, 2016, plaintiffs filed an opposition to defendant's motion to dismiss. *See* Pls.' Mem. in Opp. to Def.'s Mot. [Dkt. # 21] ("Pls.' Opp."). But plaintiffs failed to address, and thereby conceded, a number of defendant's arguments. Plaintiffs briefed the issues of arbitral immunity and whether FINRA Regulation is a state actor for purposes of their section 1983 claim, and they touched upon defendant's ripeness argument, *id.* at 8–11, 18–19, but they made no attempt to address any other issues. Instead, plaintiffs devoted approximately six pages to attacking the validity of the arbitration clauses in the brokerage contracts, to which defendant FINRA Regulation was not a party. *See id.* at 11–17. Defendant filed a reply to plaintiffs' opposition on September 22, 2016. Reply in Supp. of Def.'s Mot. [Dkt. # 22] ("Def.'s Reply").

## STANDARD OF REVIEW

### I. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as

well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels

and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## ANALYSIS

### I. Plaintiffs conceded the arguments that they failed to address in their opposition to defendant's motion to dismiss.

Plaintiffs failed to address four of the seven arguments that defendant raised in its motion to dismiss. *See* Pls.' Opp. When a plaintiff fails to address arguments made in a defendant's motion to dismiss, the Court may treat those arguments as conceded. *See* LCvR 7(b). "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002), citing *FDIC v. Bender*, 127 F.3d 58, 67–68 (D.C. Cir. 1997). The discretion to enforce this rule lies wholly with the district court. *Id.*

Because plaintiffs have not addressed defendant's arguments that defendant is entitled to regulatory immunity, the complaint fails to name indispensable parties, the Exchange Act does not create a private right of action, and the request for the Court to appoint new arbitrators is moot, the Court will treat the motion to dismiss on those grounds as conceded.

Defendant contends that it is not a proper party to this lawsuit and that Counts I and II should be dismissed because plaintiffs failed to name the real parties in interest – Wells Fargo and Fulcrum. Def.'s Mem. at 15–17. Because plaintiffs did not respond to defendant's argument, this argument is conceded, and the Court will dismiss Counts I and II. *See Hopkins*, 238 F. Supp. 2d at 178.

Plaintiffs failed to oppose defendant's argument that Count IV is moot because the arbitrator vacancies have already been filled. *See* Def.'s Mem. at 25. So, Count IV will be dismissed as well. *See Hopkins*, 238 F. Supp. 2d at 178.

All that remains then is Count III, the section 1983 claim. Although plaintiffs did respond to defendant's argument that it is not a state actor, Pls.' Opp. at 18–19, plaintiffs did not address defendant's argument that it is immune from suit under the doctrine of regulatory immunity. *See* Def.'s Mem. at 21–23. So, the Court could dismiss plaintiffs' claims on that basis alone.

Moreover, the Court has grounds to grant defendant's motion to dismiss because plaintiffs' claims are not ripe for review, and defendant is entitled to arbitral immunity.[8] Therefore, the case will be dismissed in its entirety.

8 Because these grounds are adequate to dismiss the complaint in its entirety, the Court need not address defendant's additional arguments.

**II. Plaintiffs' claims in Count III that their constitutional rights were violated due to an allegedly unfair arbitration process are not ripe for review.**

"The ripeness doctrine generally deals with when a federal court can or should decide a case. Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is 'imminent' or 'certainly impending.'" *Am. Petrol. Inst. v. Envtl. Prot. Agency*, 683 F.3d 382, 386 (D.C. Cir. 2012); *see also Lujan*, 504 U.S. at 560 (holding injury-in-fact must be "actual" or "imminent"). And "[e]ven if a case is 'constitutionally ripe,' . . . there may also be 'prudential reasons for refusing to exercise jurisdiction.'" *Am. Petrol. Inst.*, 638 F.3d at 386, quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). As the D.C. Circuit has explained:

> The fundamental purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

*Sprint Corp. v. Fed. Commc'ns Comm'n*, 331 F.3d 952, 957 (D.C. Cir. 2003), quoting *Nat'l Park Hospitality*, 538 U.S. at 807–08.

While the constitutional aspect of ripeness may involve the same impending injury-in-fact requirement that is necessary for standing, the prudential aspect of ripeness requires more: a court must "balance[] 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427–28 (D.C. Cir. 1996), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). The fitness of an issue for judicial decision depends on whether there are "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985), quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984).

Since the arbitration is still ongoing, plaintiffs' challenge to the proceeding is not ripe for review. For Article III purposes, plaintiffs cannot demonstrate that they have suffered an actual injury, or that any harm is "imminent or certainly impending." *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013) (dismissing plaintiff's petition for review of agency's final rule for lack of jurisdiction where rule had not yet been implemented, so injury had not emerged and therefore case was not ripe for review). And prudential considerations favor dismissal as well. While plaintiffs express fear that they will not receive an objective hearing, Compl. ¶¶ 5, 83, 107, and they take issue with certain interlocutory procedural rulings such as the denial of the requested discovery and the postponement of hearing dates, *id.* ¶¶ 33, 47, 77, 98, 114, the arbitration has not yet concluded, and the outcome – which could be in plaintiffs' favor – is unknown. So any alleged bias on the part of FINRA Regulation's arbitrators has not yet produced any adverse consequences, and the record upon which one would determine whether plaintiffs'

constitutional rights have been violated has not yet been developed. Thus, plaintiffs' claims under Count III are not ripe for review, and they will be dismissed.[9]

**III. Plaintiffs' remaining claims must be dismissed because defendant is entitled to arbitral immunity.**

The Supreme Court has explained that "judges, advocates, and witnesses" enjoy "absolute immunity . . . because of the special nature of their responsibilities." *Butz v. Economou*, 438 U.S. 478, 511 (1978). "The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id.* at 512 (internal citations omitted). Courts have extended the doctrine of absolute immunity to a wide range of persons who play a role in the adjudicative process. *See, e.g.*, *id.* at 512–13 ("We think that adjudication within a federal administrative agency shares enough of the

9 Because plaintiffs' constitutional claims are not ripe for review, the Court does not need to determine whether defendant is a "state actor" for purposes of plaintiffs' section 1983 claim, but the claim fails on that basis as well. In order to state a claim under section 1983, a plaintiff "must allege that some person has deprived him of a federal right" and "that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see also Ranger v. Tenet*, 274 F. Supp. 2d 1, 6 (D.D.C. 2003) (holding that plaintiff failed to state a claim under section 1983 where plaintiff alleged the CIA, a government agency, acted "under color of federal statutes and agency procedures when it allegedly violated [plaintiff's] Fifth and Fourteenth Amendment rights"). Plaintiffs have failed to state a claim under section 1983 because they do not allege that defendant acted under state law; rather, they allege that defendant acted "under federal laws" and in violation of "FINRA Rules." Compl. ¶¶ 108–09. Courts in this jurisdiction have already determined that FINRA and FINRA Regulation, or their predecessors NASD and NASD Regulation, are not "state actors" for purposes of a section 1983 claim. *See Marchiano v. Nat'l Ass'n of Secs. Dealers, Inc.*, 134 F. Supp. 2d 90, 95 (D.D.C. 2001) ("The court is aware of no case . . . in which NASD [d]efendants were found to be state actors."); *Graman v. Nat'l Ass'n of Secs. Dealers, Inc.*, No. 97-1556, 1998 WL 294022, at *2–3 (D.D.C. April 27, 1998) ("Every court that has considered the question has concluded that NASD is not a government actor."). And, other courts have reached the same conclusion. *See, e.g.*, *Epstein v. Secs. & Exch. Comm'n*, 416 F. App'x 142, 148 (3d Cir. 2010); *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) ("It is clear that NASD is not a state actor and its requirement of mandatory arbitration is not state action."); *Shrader v. Nat'l Ass'n of Secs. Dealers, Inc.*, 855 F. Supp. 122, 124 (E.D.N.C. 1994), *aff'd*, 54 F.3d 774 (4th Cir. 1995).

characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (extending immunity to mediators).[10] Defendant contends that it is immune from suit in its position as an arbitration forum and that plaintiffs "are unable to advance any set of facts that would state a claim against" FINRA Regulation. Def.'s Mem. at 8–12. The Court agrees.

The majority of circuit courts have extended arbitral immunity to cover not only the individual arbitrator, but the arbitration forum as well. *See, e.g.*, *Pfannenstiel v. Merrill Lynch*, 477 F.3d 1155, 1159 (10th Cir. 2007) ("[C]ourts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration."); *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n., Inc.*, 312 F.3d 833, 844 (7th Cir. 2002) (finding arbitration forum immune from suit); *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) ("[O]rganizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity from civil liability."); *Hawkins v. Nat'l Ass'n of Sec. Dealers Inc.*, 149 F.3d 330, 332 (5th Cir. 1998) ("The NASD enjoys arbitral immunity from civil liability for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings."), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith v. Manning*, 136 S. Ct. 1562 (2016); *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 383 (8th Cir. 1996) ("Arbitral immunity protects all acts within the scope of the arbitral process," including those by "sponsoring organizations"); *Austern v. Chi. Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) (holding that the "commercial sponsoring organization" is "entitled to immunity for all functions that are integrally related to the arbitral process"); *Corey v.*

10 The District of Columbia has codified arbitral immunity and granted an arbitrator absolute immunity from liability "to the same extent as a judge of a court of the District of Columbia acting in a judicial capacity." D.C. Code § 16-4414.

*N.Y. Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) ("Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity."). While the D.C. Circuit has yet to take up the issue, the Court finds the reasoning of other circuits persuasive.

The doctrine of arbitral immunity "rests on the notion that arbitrators acting within their quasi-judicial duties are the functional equivalent of judges, and, as such, should be afforded similar protection." *Pfannenstiel*, 477 F.3d at 1158. As the Sixth Circuit noted in *Corey*, failing to extend immunity to the boards sponsoring the arbitrators would render the immunity "illusionary" because "[i]t would be of little value to the whole arbitral procedure to merely shift the liability to the sponsoring association." 691 F.2d at 1211; *see also Olson*, 85 F.3d at 383 ("Without this extension, arbitral immunity would be almost meaningless because liability would simply be shifted from individual arbitrators to the sponsoring organization."). Consistent with the purposes of arbitral immunity, the Court will extend the immunity to FINRA Regulation here.

Plaintiffs' argument that defendant is not entitled to immunity because it has "unclean hands" is unavailing. Plaintiffs posit that defendant "is now seeking immunity for violating its duties as an arbitration sponsor to prevent discovery of its own misconduct," that is, the alleged failure to adhere to its own rules. Pls.' Opp. at 9–10. But plaintiffs' proposed exception would swallow the rule, and the case law supports applying arbitral immunity even in the face of similar claims. *See*, *e.g.*, *Olson*, 85 F.3d at 383 ("A sponsoring organization is immune from civil liability for improperly selecting an arbitration panel, even when the selection violates the organization's own rules."); *Austern*, 898 F.2d at 886–87; *Corey*, 691 F.2d at 1208–09. Because all of plaintiffs'

claims against FINRA Regulation are barred by the doctrine of arbitral immunity, the action will be dismissed.[11]

## CONCLUSION

Plaintiffs failed to oppose multiple arguments as to why their claims should not be dismissed, and the Court treats those arguments as conceded. Those conceded arguments alone provide a sufficient basis for the Court to dismiss all of plaintiffs' claims against FINRA Regulation. Moreover, plaintiffs' constitutional claims in Count III regarding unfair treatment during the arbitration must be dismissed under Federal Rule of Civil Procedure 12(b)(1) because they are not ripe for review. Plaintiffs' claims against defendant are barred by the doctrine of arbitral immunity, so plaintiffs have also failed to state a claim against defendant under Federal Rule of Civil Procedure 12(b)(6). Therefore, the Court will grant defendant's motion and this case will be dismissed.

A separate order will issue.

Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: January 27, 2017

---

11 There is also support for the proposition that the doctrine of regulatory immunity provides an alternative basis to dismiss the action. *See In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (holding that when an SRO, such as FINRA, "acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC"); *see also DL Capital Grp. v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93, 97 (2d Cir. 2005). However, the Court need not reach this issue because plaintiffs have conceded it.